IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LORI HUNT, : | |
| : | Case No. 2:23-cv-4035 |
| **Plaintiff,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Chelsey M. Vascura |
| AT&T INC., et al., : | |
| : | |
| **Defendants.** : | |

**OPINION & ORDER**

This matter is before this Court on Defendants' Motion to Compel Arbitration. (ECF No. 7). For the following reasons, the Motion is **GRANTED**, and this case is hereby **STAYED** pending arbitration. Plaintiff's Motion to File Surreply (ECF No. 10) is also **GRANTED.** The parties are **ORDERED** jointly to file a status report **every six (6) months** indicating the status of arbitration.

**I. BACKGROUND**

In late 2020, Plaintiff Lori Hunt created an account on CareerPath, the platform that Defendant AT&T uses to manage hiring and pre-onboarding. (ECF No. 7-1 at ¶¶ 7-8, 12). After Plaintiff applied for a position, AT&T offered her a role as a Manager of Outside Plant Planning & Engineering Design. (*Id.* at ¶ 13). When AT&T made Plaintiff the offer, it provided her with pre-onboarding documents, which she was required to review and electronically sign as a condition of her employment. (*Id.* at ¶¶ 9, 13). According to AT&T's records, Plaintiff logged into her password protected CareerPath account, reviewed the Management Arbitration Agreement ("MAA"), and signed it. (*Id.* at ¶ 14). The MAA "applies to any claim that [Hunt] may have against . . . any AT&T company," including those "arising out of or related to [Hunt's] employment

1

or termination of employment with the Company," and requires that "any dispute to which this Agreement applies . . . be decided by final and binding arbitration instead of court litigation." (*Id.* at 8). Relevant to the Parties' arguments here is the MAA's provision on assignment of a neutral arbitrator:

> The arbitration will be held under the auspices of a third party which will manage the arbitration process: JAMS, Inc. . . . The arbitration shall be held in accordance with its Employment Arbitration Rules & Procedures (and no other JAMS rules) . . . . Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator), selected pursuant to JAMS rules or by mutual agreement of the parties.
>
> \*\*\*
>
> Unless each party to the arbitration agrees in writing otherwise, the location of the arbitration proceeding shall be a facility chosen by JAMS within the county (or parish) where you work or last worked for the Company.

(ECF No. 7-1 at 1).

Plaintiff Hunt, a Black woman, alleges that during her employment with AT&T, she regularly received positive performance reviews and substantial bonuses. (ECF No. 1 at ¶ 28). Plaintiff usually reported to Stacey Fowler, the Ohio Director of Access—Construction and Engineering, who was the highest-ranking Black female employee at AT&T Ohio. (*Id.* at ¶ 26). During Plaintiff's tenure at the company, however, she learned that some white, male employees resented Fowler and other minority employees. On one occasion, Plaintiff heard a white, male coworker complain about Fowler, saying: "We had to take eight years of Obama, and now we have deal with 'that bitch'?" (*Id.* at ¶ 33).

After a reduction-in-force, during which Fowler decided to let several white, male managers go, Fowler found a threatening note in her office: "YOU STUPID **NIGGER** BITCH. IF WE CAN'T TAKE YOU **DOWN** WILL TAKE YOU **OUT.**" (*Id.* at ¶¶ 41-42) (emphasis and full expletive in original). Fowler's business card was attached to the threat, with her title crossed out.

2

(*Id.* at ¶ 42). AT&T recommended that Fowler work from home while it investigated the note. (*Id.* at ¶¶ 43-44). Shortly thereafter, however, AT&T terminated Fowler. (*Id.* at ¶ 45). Fowler has also filed a lawsuit with this Court.

After Fowler's termination, Plaintiff Hunt took on a new role at AT&T, where she was trained by an individual who confirmed the company's culture of hostility towards Black women. That employee explained to Plaintiff that she was perceived as a "buffer" and "minion" to Fowler, who was felt to have insulated herself with other Black employees. (*Id.* at ¶¶ 51, 53).

In response to her termination, Fowler filed a charge of discrimination with the Ohio Civil Rights Commission against AT&T. (*Id.* at ¶ 58). She requested that Plaintiff Hunt send her AT&T's Code of Business Conduct, which she had been accused of violating. (*Id.* at ¶ 60). Plaintiff obliged her request and passed along the publicly available document. (*Id.* at ¶¶ 61-63). AT&T then opened an investigation into Plaintiff for providing Fowler with "proprietary information" based on an "anonymous tip." (*Id.* at ¶ 71). Plaintiff explained to the investigator that she had sent the document, but that because it was publicly available, it was not, in her view, "proprietary information." (*Id.* at ¶ 73). The investigator expressed that he believed Plaintiff should not be worried. (*Id.* at ¶¶ 80-81).

Nonetheless, Plaintiff was later terminated by her supervisor for providing "proprietary information" to Fowler. (*Id.* at ¶ 87). Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission, which issued a Notice of Right to Sue Letter. (*Id.* at ¶¶ 18-19). After Plaintiff retained counsel and sent AT&T a demand letter, AT&T responded that it believed Plaintiff to be bound by AT&T's MAA. (ECF No. 8-1 at ¶¶ 2-3). Plaintiff filed suit with this Court, and Defendants filed the Motion to Compel Arbitration *sub judice*.

## II. LAW & ANALYSIS

Defendants ask that this Court to compel arbitration under the FAA and stay proceedings pending arbitration. (ECF No. 7-1 at 4). In their Motion to Compel, Defendants primarily argue that the MAA is valid and enforceable. Specifically, Defendants assert that they offered Plaintiff the MAA, she accepted it, and that the agreement is supported by valid consideration. (*Id*. at 5-6, 9-12). Ohio Courts have generally held that an offer of employment is sufficient consideration to support an arbitration agreement. *Butcher v. Bally Total Fitness Corp.*, 2003-Ohio-1734, ¶31 (8th Dist). Defendants also maintain the claims asserted in the Complaint fall squarely within the scope of the MAA. (ECF No. 7 at 11-12). The MAA applies to all claims "arising out of or related to [Hunt's] employment or termination of employment with the Company and any other disputes regarding the employment relationship," which Defendants assert encompasses Plaintiff's workplace discrimination claims. (*Id.*).

Plaintiff does not challenge the arbitration agreement's formation or substantive scope. She argues, however, that the agreement is unenforceable because no arbitrator who meets all the agreement's requirements exists. (ECF No. 8). Specifically, Plaintiff argues that AT&T's unilaterally drafted MAA requires a JAMS, Inc. arbitrator that is: (1) a retired judge or a lawyer; (2) is barred in Ohio; and (3) has expertise in employment law. (*See id.*). Because none of JAMS's panelists is barred in Ohio, Plaintiff believes that the MAA is unenforceable.

In response, Defendants primarily argue that the MAA's licensure and expertise language does not apply to retired judges. Defendants also assert that one JAMS panelist, Ms. Lisbeth Bulmash, is an Ohio-barred attorney with employment expertise. (ECF No. 9 at 2-5). Plaintiff moves for leave to file a surreply, explaining that Bulmash's Ohio license is inactive, and she cannot, therefore, serve as the neutral arbitrator contemplated by the agreement. Plaintiff's Motion

4

for Leave to File a Surreply is **GRANTED**. But because Plaintiff simply misreads the plain language of the MAA to preclude the three retired judges on JAMS's panel, the licensure status of the attorney in question is ultimately irrelevant.

As explained above, the MAA requires the following:

> Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator), selected pursuant to JAMS rules or by mutual agreement of the parties.
>
> \*\*\*
>
> Unless each party to the arbitration agrees in writing otherwise, the location of the arbitration proceeding shall be a facility chosen by JAMS within the county (or parish) where you work or last worked for the Company.

(ECF No. 7-1 at 1).

In Plaintiff's view, the phrase "who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened" modifies both "a retired judge" and "an attorney." It does not. In contract interpretation, the "last antecedent rule" means that generally, "a limiting clause or phrase" modifies only "the noun or phrase that it immediately follows." *Allen v. United States*, 83 F.4th 564, 568 (6th Cir. 2023). As Defendants point out, this "rule reflects the basic intuition that when a modifier appears at the end of a list, an ordinary reader would apply that modifier only to the item directly before it." *Id.* Applying the last antecedent rule here, it is evident that the agreement permits a retired judge to serve as the neutral, even if the judge is neither barred in Ohio, nor an expert in employment law. This is particularly true because the agreement uses an "either . . . or" structure and separates the phrase "a retired judge" from the phrase "an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened" with a comma. In contrast, had the comma been placed after "attorney" instead, it might have indicated "that the qualifying language [was] to be applied to all

5

of the previous phrases and not merely the immediately preceding phrase." *In re Tudor*, 342 B.R. 540, 554 (Bankr. S.D. Ohio 2005).

In an attempt to grapple with the last antecedent presumption, Plaintiff argues that its application here is overcome by contrary evidence. *See Wohl v. Swinney*, 888 N.E.2d 1062, 1065 (Ohio 2008) (explaining that "if there is contrary evidence that demonstrates that a qualifying phrase was intended to apply to more than the term immediately preceding it, we will not apply the last-antecedent rule so as to contravene that intent."). In Plaintiff's view, the fact that the agreement requires the arbitration to take place in the state in which the claim arose, and requires the arbitrator to apply that state's law when appropriate, indicates that the bar status of the neutral is integral to the agreement. (ECF No. 8 at 7-8). But these references to location and state law are insufficient evidence to override the plain meaning of the agreement's text. As AT&T points out, judges routinely apply the law of jurisdictions in which they do not sit. That a retired judge would be exempt from a requirement to be barred in the state in which the arbitration is to take place is not surprising or nonsensical. Given that three JAMS panelists are retired judges who are available to travel to Columbus, Ohio, (ECF No. 9-1 at 24-25), Plaintiff's unenforceability argument must fail.

Because the plain text of the agreement permits a retired judge—irrespective of bar status or employment expertise—to serve as a neutral arbitrator, there is no need to address the parties' arguments regarding this Court's authority to appoint another arbitrator or whether the agreement's severability clause could save the agreement from unenforceability.

### III. CONCLUSION

In accordance with the foregoing discussion, Defendant's Motion (ECF No. 7) is **GRANTED**, and this case is **STAYED** pending completion of arbitration. Plaintiff's Motion for

Leave to File Surreply (ECF No. 10) is also **GRANTED**. The parties are **ORDERED** jointly to file a status report **every six (6) months** indicating the status of arbitration.

    **IT IS SO ORDERED.**

                                                **ALGENON L. MARBLEY**
                                                **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 28, 2024**